UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ANDREW R.,

                 Plaintiff,

        v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

_____

**DECISION AND ORDER**

1:24-CV-00119 EAW

## INTRODUCTION

Represented by counsel, plaintiff Andrew R. ("Plaintiff") brings this action pursuant to Title XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying his application for supplemental security income ("SSI"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g).

Presently before the Court are the parties' cross motions for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), (Dkt. 6; Dkt. 8), and Plaintiff's reply (Dkt. 9). For the reasons discussed below, Plaintiff's motion (Dkt. 6) is granted to the extent that the matter is remanded for further administrative proceedings, and the Commissioner's motion (Dkt. 8) is denied.

## BACKGROUND

Plaintiff protectively filed his application for SSI on October 1, 2020. (Dkt. 5 at 21,

183-89).[1]  In his application, Plaintiff alleged disability beginning January 1, 2020.  (*Id.* at 21, 183).    Plaintiff's  applications  were  initially  denied  on  April  13,  2021,  and  on reconsideration on November 2, 2021.  (*Id.* at 21).  At Plaintiff's request, a telephone hearing was held before administrative law judge ("ALJ") Lucian Vecchio on December 19, 2022.  (*Id.* at 37-55).  On February 2, 2023, the ALJ issued an unfavorable decision. (*Id.* at 21-31).  Plaintiff requested Appeals Council review; his request was denied on December 12, 2023, making the ALJ's determination the Commissioner's final decision. (*Id.* at 5-10).  This action followed.

## LEGAL STANDARD

### I.    District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court  is  limited  to  determining  whether  the  SSA's  conclusions  were  supported  by substantial evidence in the record and were based on a correct legal standard."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g).  The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence.  42 U.S.C. § 405(g).  "Substantial evidence means more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted).  It is not the Court's function to "determine *de novo* whether [the

---

[1]      When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II.    Disability Determination

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Bowen v. City of N.Y.*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 416.920(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* § 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* § 416.920(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, *id.* § 416.909, the

claimant is disabled.  If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments.  *See id.* § 416.920(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work.  *Id.* § 416.920(f).  If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled.  *Id.* § 416.920(g).  To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience.  *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

## I.    The ALJ's Decision

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. § 416.920.  At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity since October 1, 2020, the application date.  (Dkt. 5 at 23).

At step two, the ALJ found that Plaintiff suffered from the severe impairments of: back disorder; right hip avascular necrosis; right knee osteoarthritis; hypertension; diabetes mellitus; transient ischemic attack; unspecified depressive disorder; unspecified anxiety

disorder; obesity; fatigue; and marijuana/alcohol use disorder. (*Id.* at 23-24). The ALJ also found that Plaintiff's dyslipidemia, hypertriglyceridemia, urinary incontinence, vitamin D deficiency, and myopia were non-severe. (*Id.* at 24).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id.*). In particular, the ALJ considered the requirements of Listings 1.15, 1.18, 12.04, and 12.06 in reaching his conclusion. (*Id.* at 24-26).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform sedentary work as defined in 20 C.F.R. § 416.967(a), with the following non-exertional limitations:

> He could stand for about five minutes approximately every 20 minutes while remaining on task.
> He could use a cane when standing or walking.
> He would less than occasionally kneel, squat, or crawl.
> He would only occasionally stoop, crouch, or twist.
> He would not climb ladders, ropes, or stairs; or walk on uneven surfaces; or be exposed to unprotected heights, or heavy machinery; or operate motor vehicles, or foot controls, or pedals (giving him the benefit of the doubt per right knee instability).
> He could have one additional 10-minute break in the morning, and one additional 10-minute break in the afternoon.
> He could be off-task 5% of the workday.

(*Id.* at 26-27). At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. (*Id.* at 30).

At step five, the ALJ relied on the testimony of a vocational expert to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of table worker, semiconductor bonder, and order clerk-food.

(*Id.* at 30-31).  Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act.  (*Id.* at 31).

## II.    <u>Remand for Further Administrative Proceedings is Required</u>

Plaintiff asks the Court to reverse the Commissioner's decision, or in the alternative remand the matter for further administrative proceedings, arguing that the ALJ did not properly evaluate the supportability and consistency of the treating source opinion from Kafai Lai, M.D., and that the RFC was not supported by substantial evidence because it contained a highly specific limitation unsupported by medical evidence.  (Dkt. 6-1 at 7-13).  For the following reasons, remand for further administrative proceedings is required.

In deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole."  *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013).  It is well-settled that an ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in his decision."  *Id.*  However, an ALJ is not a medical professional, and "is not qualified to assess a claimant's RFC on the basis of bare medical findings."  *Ortiz v. Colvin*, 298 F. Supp. 3d 581, 586 (W.D.N.Y. 2018) (quotation omitted).  In other words:

> An ALJ is prohibited from 'playing doctor' in the sense that 'an ALJ may not substitute his own judgment for competent medical opinion. . . .'  This rule is most often employed in the context of the RFC determination when the claimant argues either that the RFC is not supported by substantial evidence or that the ALJ has erred by failing to develop the record with a medical opinion on the RFC.

*Quinto v. Berryhill*, No. 3:17-cv-00024 (JCH), 2017 WL 6017931, at *12 (D. Conn. Dec. 1, 2017) (citations omitted).  "[A]s a result[,] an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence."  *Dennis v. Colvin*,

195 F. Supp. 3d 469, 474 (W.D.N.Y. 2016) (quotation and citation omitted).  However, at bottom, "[a]n RFC finding is administrative in nature, not medical, and its determination is within the province of the ALJ, as the Commissioner's regulations make clear." *Curry v. Comm'r of Soc. Sec.*, 855 F. App'x 46, 48 n.3 (2d Cir. 2021).

The ALJ determined that Plaintiff had the RFC to perform a reduced range of sedentary work that included time off-task of five percent of the workday and one additional break in the morning and one in the afternoon.  Plaintiff argues this highly specific RFC was not adequately tied to the evidence of record.  On these facts, the Court agrees.

In the decision, the ALJ considered medical opinion evidence from several sources. Nikita Dave, M.D., conducted a consultative examination in January 2021 and noted that Plaintiff exhibited diminished lumbar/right hip range of motion.  (Dkt. 5 at 349-53). Plaintiff reportedly brought a cane with him to the examination but did not use it for indoor mobility or transfers.  Dr. Dave indicated negative straight-leg raise tests, full knee range of motion, and intact extremity strength/sensation.  Dr. Dave opined that Plaintiff should avoid ladders, repetitive crouching, repetitive squatting, and unprotected heights, and indicated a mild-to-moderate restriction for repetitive bending and for gross motor manipulation with the right lower extremity.

The ALJ also addressed the opinions of Dr. Brauer and Dr. Ehlert, state agency medical consultants who reviewed the claimant's file in April 2021 and July 2021, initially

and upon reconsideration, and who opined that Plaintiff could perform medium physical exertion with frequent postural restrictions. (*Id.* at 63-75, 77-94).

The ALJ also considered the opinions of Plaintiff's treating orthopedic surgeon, Dr. Lai, who prepared a medical opinion statement in September 2022 indicating that Plaintiff would be limited to standing for four hours during an eight-hour workday (no more than 30 minutes at one time), sitting for at least six hours during an eight-hour workday (for two hours at one time), lifting/carrying 20 pounds occasionally, climbing on a rare basis, crouching on a rare basis, twisting occasionally, and stooping occasionally. (*Id.* at 652-56). Dr. Lai indicated that Plaintiff's prognosis was poor and also opined that Plaintiff would require two absences per month, two to three unscheduled breaks per day of 15 minutes each, and the ability to shift positions at will.

The ALJ explained his assessment of the opinion evidence as follows:

I am persuaded by the opinions of Dr. Dave, Dr. Brauer, and Dr. Ehlert, to the extent that they highlight that [Plaintiff's] impairments do not preclude him from all work; however, these sources understate [Plaintiff's] exertional limitations and do not account for the impact his ongoing pain symptoms would have on his ability to sustain tasks. Examinations indicative of range of motion loss, and diagnostic imaging indicative of severe arthritis, support further lifting/carrying, standing/walking, and postural restrictions.

The opinion of Dr. Lai is persuasive as to the exertional limitations, which generally suggest that [Plaintiff] would be able to perform sedentary/light physical exertion; however, Dr. Lai overstates [Plaintiff's] need for off-task time. The overall record is consistent with significant lifting/carrying and standing/walking limitations, given [Plaintiff's] ongoing pain despite treatment and the discussion of the need for surgery by providers. These limitations are supported by documented findings of range of motion loss, antalgic gait, and the need for a cane. Nevertheless, [Plaintiff's] limited treatment (one-time hip pain injections and medication management) is inconsistent with the need for excessive absences or excessive off-task time. [Plaintiff] did not undergo surgery, seek emergency care, or require hospitalization. [Plaintiff's] acknowledged activities of daily living, and the

- 8 -

lack of objective findings of extremity neurological deficits indicate that he retains the ability to perform at least sedentary physical exertion.

(*Id.* at 28-29).

As noted, in the RFC, the ALJ determined that Plaintiff could be off-task five percent of the workday, in addition to one additional 10-minute break in the morning and one additional 10-minute break in the afternoon. (*Id.* at 27). The only explanation offered by the ALJ relating to his assessment of Plaintiff's off-task time was as set forth above in connection with his consideration of Dr. Lai's opinion, the only provider to opine on off-task time, and as follows:

> In giving deference to his allegations of fatigue and ongoing pain, he needs the opportunity for one additional 10-minute break in the morning and one additional 10-minute break in the afternoon, and he needs the opportunity to be off-task 5% of the workday.

(*Id.* at 28). While this explanation may provide insight as to the ALJ's determination that off-task time was warranted, it does not clearly explain how he reached the five percent off-task limitation, nor is it otherwise apparent from the record.

It is well-settled that an RFC finding is administrative in nature and, for that reason, the ALJ is not required to adopt any one medical opinion in its entirety; rather, the ALJ's RFC finding must be supported by substantial evidence in the record. *See Matta*, 508 F. App'x at 56. Further, because Plaintiff's claim was filed after March 27, 2017, the new regulations—which provide new guidelines for the ALJ's evaluation of opinion evidence—apply to Plaintiff's disability claim. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01, at *5844 (Jan. 18, 2017). For example, the ALJ is no longer required to give "controlling weight" to a

treating physician's opinion.  *See* 20 C.F.R. § 416.920c(a).  However, the new regulations did not relieve the ALJ of his general duty to develop the medical record, or otherwise abrogate the general principle that an administrative hearing is not adversarial in nature.

As noted, the only medical opinion in the record expressly relating to time off-task was from Dr. Lai, Plaintiff's treating orthopedic surgeon.  Notwithstanding the ALJ's conclusion that Dr. Lai's opinions were persuasive as to Plaintiff's exertional limitations, the ALJ concluded that the portion of Dr. Lai's opinion indicating that Plaintiff would require two absences per month, two to three unscheduled breaks, and the ability to shift positions at will was overstated and he decreased Plaintiff's permissible time off-task to only five percent.  To be sure, "an RFC determination, even one containing highly specific limitations, is not fatally flawed merely because it was formulated absent a medical opinion or specific limitation." *Tiffany L. v. Comm'r of Soc. Sec.*, No. 1:20-CV-0677 (WBC), 2021 WL 3145694, at *4 (W.D.N.Y. July 26, 2021) (citing *Cook v. Comm'r of Soc. Sec.*, 818 F. App'x 108, 109-10 (2d Cir. 2020)); *see also Michael K. v. Comm'r of Soc. Sec.*, No. 1:20-cv-1467-DB, 2022 WL 3346930, at *10 (W.D.N.Y. Aug. 12, 2022) ("[J]ust because there is no explicit opinion or subjective complaint that mirrors an RFC limitation does not mean there was an error."); *Jennifer O. v. Comm'r of Soc. Sec.*, No. 1:20-CV-1474 (WBC), 2022 WL 2718510, at *4 (W.D.N.Y. July 13, 2022) ("[A]n RFC determination, even one containing highly specific limitations, is not fatally flawed merely because it was formulated absent a medical opinion.").

Rather, what is important is that the written determination make clear how the ALJ arrived at the specific limitation to ensure it was not the result of the ALJ's speculation,

conjecture, or his own lay opinion. *See Cosnyka v. Colvin*, 576 F. App'x 43, 46 (2d Cir. 2014) (affirming remand where ALJ found that plaintiff would be "off-task" for ten percent of the workday but that determination was not supported in the record and could not be based on an "ALJ's own surmise"). In other words, while there must be evidentiary support for the ALJ's specific limitations, that support need not be in the form of a medical opinion as long as the ALJ's rationale in the written determination is supported by substantial evidence. *See Cook v. Comm'r of Soc. Sec.*, 818 F. App'x at 109 (medical opinion providing specific restrictions reflected in the RFC is not required if the record contains sufficient evidence from which an ALJ can assess the RFC); *see also Joshua K. v. Comm'r of Soc. Sec.*, No. 19-cv-66-FPG, 2021 WL 235886, at *2-3 (W.D.N.Y. Jan. 25, 2021) (remand required where the ALJ did not "point to any evidence in the record suggesting why Plaintiff would be off task for this specific percentage of time," and explaining that "[s]pecific RFC assessments, like percentage of time off-task, must be based on evidence in the record," and further explaining that generalizations pointed to by the Commissioner, including that the plaintiff had normal attention and concentration examination, engaged in many activities, and attended college, "were [not] included in the ALJ's decision as support for the specific off task assessment nor do they translate into a finding that Plaintiff would be off task five percent of the day").

This explanation is particularly important where, as here, the limitation assessed by the ALJ is *less* restrictive than that contained in the only medical opinion on point. *See Kenneth H. v. Comm'r of Soc. Sec.*, No. 23-CV-6358-LJV, 2024 WL 5075613, at *6 (W.D.N.Y. Dec. 11, 2024) ("And in contrast to cases where the ALJ's specific finding was

not error because it was more generous to the claimant than any medical opinion, . . .
medical opinions here found greater limitations."); *see also Jessica W. v. Comm'r of Soc.
Sec.*, No. 1:20-CV-1209-DB, 2022 WL 345096, at *5 (W.D.N.Y. Feb. 4, 2022) ("Here,
despite the fact that no physician issued an opinion regarding off-task limitations for
Plaintiff, the ALJ explained that he included an off-task limitation of 10% of the workday
"due to, for example, [Plaintiff's] attention/concentration lapses." Tr. 26, 57. Because the
ALJ afforded Plaintiff the benefit of the doubt by including this limitation, the Court finds
there is no ground for remand.").

        Here, while the ALJ provided some general reasons for discounting Dr. Lai's
opinion, it is not clear to the Court how the ALJ settled on a five percent off-task limitation
rather than some other percentage. Because Dr. Lai's opinion was the only one in the
record that addressed off-task time and because the ALJ determined that a lower percentage
was appropriate, it was incumbent on the ALJ to identify sufficient information that would
justify the deviation from Dr. Lai's recommendations and make clear how he settled on the
time off-task set forth in the RFC. *Michelle A. v. Saul*, No. 19-CV-00991-MJR, 2020 WL
7223235, at *4 (W.D.N.Y. Dec. 8, 2020) ("Case law from this District reflects that if an
ALJ believes that an off-task time limitation is necessary, he or she must refer to a medical
opinion or other specific evidence in the record that supports such a limitation.").

        And not only that, but the determination of percentage in this case is particularly
problematic given that at the administrative hearing, when the ALJ presented a hypothetical
to the VE which contained different off-task limitations, the VE explained for example that
an off-task limitation of twenty percent would preclude employment. (Dkt. 5 at 54).

Likewise, the VE stated that a need to be absent two days a month would render Plaintiff unable to perform any jobs.  (*Id.*); s*ee also Matthew G. v. Comm'r of Soc. Sec.,* No. 21-CV-01222-MJR, 2024 WL 48301, at *5 (W.D.N.Y. Jan. 4, 2024) ("The ALJ's error was not harmless.  The VE testified that employers will tolerate employees being off task ten to 15 percent of the workday, but anything over 15 percent would preclude all competitive work. . . So, if Plaintiff's time off task was actually greater than ten or 15 percent, the VE might have come to a different conclusion at step five of the sequential evaluation, which could have resulted in Plaintiff being found disabled.); *Michelle A.*, 2020 WL 7223235, at *5 ("[N]oting that the percent of off-task time was 'absolutely critical' to the disability determination where the VE testified that, if the off-task time was ten percent or more, the limitation would be 'work preclusive' and accordingly 'the Court cannot say that the ALJ's failure to tether the percent of off-task time to evidence in the record was harmless error.'" (quoting *Edwards v. Comm'r of Soc. Sec.*, No. 18-CV-862-FPG, 2020 WL 4784583, at *4 (W.D.N.Y. Aug. 18, 2020))); *Elder v. Comm'r of Soc. Sec.*, No. 18-CV-1196, 2019 WL 6320355, at *6 (W.D.N.Y. Nov. 26, 2019) ("At best . . . the ALJ's conclusion comes from whole cloth.  At worst, the conclusion responds to the vocational expert's testimony that an off-task behavior restriction of six minutes per hour—that is, one more minute of off-task behavior per hour—would be work preclusive.").  Thus, in this case, the distinction between an off-task percentage of five percent versus one of twenty percent was outcome determinative as to Plaintiff's disability status and warranted greater explanation.  On

remand, should the ALJ again assess an off-task limitation, he should identify evidence in the record supporting his conclusion in that respect.

## **CONCLUSION**

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Dkt. 6) is granted to the extent that the matter is remanded for further administrative proceedings, and the Commissioner's motion for judgment on the pleadings (Dkt. 8) is denied.  The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:      September 25, 2025
            Rochester, New York